No. 19,381.

A. B. CHAPMAN AND ROCKY MOUNTAIN BEVERAGE, INC., *v.* CLARICE REDWINE.

(370 P. [2d] 147)

Decided March 19, 1962.   Rehearing denied April 16, 1962.

Messrs. Yegge, Hall and Shulenburg, Mr. Wesley H. Doan, for plaintiff in error A. B. Chapman.

Mr. Darwin D. Coit, for plaintiff in error Rocky Mountain Beverage, Inc.

Messrs. Smith, Pyle, Johnson and Makris, for defendant in error.

*En Banc.*

Opinion by Mr. Justice Hall.

The parties appear here in reverse order to their appearance in the trial court. We refer to them as they there appeared or by name.

The plaintiff in her complaint, filed December 24, 1957, alleges that on July 2, 1955, the defendant, Rocky Mountain Beverage, Inc., herein referred to as Beverage Co., was engaged as a bottler and distributor of a carbonated beverage known as Vess Cola; that at that time Chapman owned and operated a grocery store known as Evans Super Market, located at 527 West Evans Avenue, Denver, Colorado; that on said date plaintiff entered said store for the purpose of buying merchandise;

"4. * * * While plaintiff was standing near a display rack in said store on which bottles of a carbonated beverage known as Vess Cola were displayed, one of the bottles of said carbonated beverage known as Vess Cola, *which bottle was on said display rack,* exploded and caused pieces of glass to be projected through the air. One or more of these pieces of glass struck plaintiff causing the injuries hereinafter described.

"5. At no time did plaintiff by her actions or omissions do anything, or omit to do anything, which proximately

*caused said explosion.* of said bottle .of. Vess Cola." (Emphasis supplied.)

Plaintiff further alleges that the Beverage Co. bottled *the bottle which exploded;* transported the *bottle which exploded* to Chapman's market, placed said *bottle which exploded* on the display rack in Chapman's market; prior to and at the time of the *explosion of the bottle of Vess Cola* the display rack was owned, maintained, and stocked by the Beverage Co.

She further alleges that "this bottle of Vess Cola" *which exploded,* which was on the display rack with other bottles of carbonated beverages, was being offered for sale by Chapman.

Next plaintiff alleges that the *explosion* of the bottle of Vess Cola was caused by the negligence of the Beverage Co. in:

" * * * improperly bottling, inspecting, handling, storing, transporting, distributing or placing upon the display rack the said bottle of Vess Cola; *or* the *explosion* and injuries were directly and proximately caused by the negligence of defendant Rocky Mountain Beverage, Inc., *or* defendant A. B. Chapman, *or* both defendants, in that the *bottle of Vess Cola which exploded* was improperly handled or offered for sale by either *or* both of the defendants after the bottle was placed on the display rack."

Next she alleges that defendants at all times had exclusive possession and control of the bottle which exploded, and that all of the facts and circumstances of the bottling, etc., are exclusively within the knowledge of defendants and beyond the knowledge of plaintiff. Then follow allegations of plaintiff's injuries, for which she seeks damages in the amount of $25,000.00.

The defendants filed separate answers in which they admit many of the allegations of plaintiff's complaint, but each denies negligence and each denies that any bottle exploded.

The case was tried to a jury which returned a verdict

in favor of the plaintiff and against both defendants, and on which judgment was entered.

Defendants are here by writ of error seeking reversal.

There is no substantial conflict in the testimony. The plaintiff testified that she and her husband went to the Chapman store sometime after 7:30 P. M., on July 2, 1955; she was carrying two cartons, one in each hand, each containing six empty pop bottles. She proceeded through an aisle for the purpose of purchasing some "Dr. Peppers"; on one side of the aisle was a fruit rack, on the other side beverage racks; the Dr. Pepper bottles were at the end of the fruit rack, a fact which she had not yet discovered. She was followed down the aisle by her husband, who was ten or twelve feet behind her.

Not seeing the Dr. Peppers, she looked toward her husband, turning her head, and remarked to him that she did not see any Dr. Peppers. She then heard a noise behind her which sounded like an explosion. She then realized her left leg was cut just above the ankle. She observed glass and liquid behind her on the aisle floor. There was no liquid on her dress; she did not see any bottle explode; she did not observe glass or liquid on the display rack or other place except on the aisle floor.

Harlan Redwine, plaintiff's husband, testified that he was following his wife in this aisle; that he was about twelve to fourteen feet behind her; she was looking down at the "six-packs"; it was a hot day; plaintiff turned to him and spoke, and he glanced down and as he glanced down he heard an explosion and his wife scream and he went to help her, and in doing so stepped on glass and liquid in the aisle. He, together with Chapman, examined the display rack, and there was no broken glass or liquid on any of the shelves of the rack. On the concrete floor in the aisle, between where he and his wife were standing at the time of the "explosion," they found the bottom of a Vess bottle, the neck with cap attached, broken glass and liquid confined to an area about three feet in diameter near the point where plaintiff was standing.

The foregoing is a fair representation of the testimony offered to prove the allegation of the complaint that a bottle "on said display rack exploded."

Conditions existing in the aisle near where plaintiff was standing when injured, coupled with conditions on the display rack where the Vess bottles were displayed immediately following the so-called explosion, render testimony of the plaintiff that "I heard this loud explosion" — the noise "sounded like a loud explosion" — "there was a loud explosion — or something — an awful loud noise," and testimony of her husband that "I glanced down, and as I glanced down I heard an explosion" — incredible and insufficient to support any finding of the spontaneous explosion of a bottle on the rack or elsewhere.

It is common knowledge and within the very nature of things that when and if a bottle filled with liquid resting on a shelf explodes, glass fragments, liquid, other bottles, broken or knocked over, remain on the shelf. On the happening of such an event one does not find all of the glass fragments and liquid in an area about three feet in diameter on a concrete floor some feet away from the shelf where the bottle was resting and where the explosion is alleged to have occurred.

The location of the glass and liquid tells the true story much more convincingly than the cry of "explosion" on which plaintiff predicates her whole case.

To accept plaintiff's story that a bottle exploded on the shelf, one would have to ignore simple facts of life, shut one's eyes to reality, substitute fiction and fantasy for fact, do a complete overhaul job on the law of gravity, and live in a land of make believe.

Not all noises are explosions. A filled bottle explodes when the inside pressure is so great as to exceed the containing strength of the bottle.

Calling a noise an explosion does not make it such, though it may be some evidence thereof. More tangible

evidence is found in the flying glass and liquid and disturbance at the point where the explosion occurs.

Plaintiff's counsel urge that:

" * * * The only reasonable inference that could be drawn from all the evidence is that the bottle of Vess did explode spontaneously in the display rack causing Mrs. Redwine's injury. * * * ."

This statement is contrary to all the physical facts. No such inference is reasonable or warranted by the evidence, and in the light of the undisputed facts is incredible.

All of the physical surroundings point indubitably to the fact that a bottle fell or was knocked from a shelf to the concrete floor and broke, scattering the glass and contents over a limited area of the floor.

█ In evaluating evidence such as that presented by plaintiff, we find the general rule well stated in 20 Am. Jur. 1033, Evidence, §§ 1183, 1184:

"The mere fact that testimony given by a witness in support of an issue is not plausible does not destroy all probative value. Where, however, the testimony of a witness is incredible, inherently or physically impossible and unbelievable, inherently improbable and irreconcilable with, or contrary to, physical facts and common observation, and experience, where it is so opposed to all reasonable probabilities as to be manifestly false or is contrary to the laws of nature or to well-known scientific principles, or where it cannot be said to amount to substantial evidence of the facts testified to or accepted as a basis for liability, it is to be disregarded as being without evidentiary value, even though uncontradicted. * * *.

* * *

"Testimony of a witness, although not directly controverted, which is opposed to the unquestioned laws of nature that lie within the court's judicial knowledge or which is clearly in conflict with scientific principles as established by the laws of physics or mechanics is of no probative value. * * *."

In *McLennon v. Whitney-Steen Co.,* 63 Colo. 568, 167 Pac. 771, this court said:

"* * * He knew the elevator was in constant operation carrying supplies, and was apt to move at any moment. The floors were only nine feet apart and the cage platform in plain view but a few feet from his head; also the absence of the rope in the shaft advised him that the elevator was above. Plaintiff's testimony that he looked up and did not see the elevator, cannot be accepted as against the physical facts that it was there, in plain view, only a few feet from his head. The legal effect and value of such evidence may be determined by the court as a matter of law. * * *."

In *Jacobsen v. McGinness,* 135 Colo. 357, 311 P. (2d) 696, this court, in disregarding McGinness' sworn testimony, that she was on her side of the road and driving slowly, said:

"* * * The physical facts speak more loudly than words in a situation such as that presented by the record before us. The impact of the McGinness and Jacobsen cars raised the Jacobsen car into the air and pushed it into the path of the Holthusen automobile. Despite Miss McGinness' testimony that she removed her foot from the accelerator and applied her brakes, the indisputed facts are that her car was traveling at a high rate of speed; ran headon into the Jacobsen automobile on the wrong side of the highway; pushed the Jacobsen vehicle back a distance of eleven feet and into the path of the Holthusen car, * * *."

See, also, *Snedden v. Summer,* 138 Colo. 144, 330 P. (2d) 530.

The following language of this court, taken from the opinion of Mr. Justice Moore, in *Winterberg v. Thomas,* 126 Colo. 60, 246 P. (2d) 1058, is applicable to the facts disclosed by the record:

" 'A court cannot accept as true that which the indisputable evidence demonstrates is false.' *Lessig v. Reading Transit & Light Co.,* 270 Pa. 299, 113 Atl. 381. The

applicable rule was quoted with approval in that case from volume 1, Elliott on Evidence, page 38, section 39, as follows: 'Even though it [an appellate court] may not be authorized to weigh evidence and pass upon the facts, it may, and should, so use its juricial [sic] knowledge as to bring about justice. Thus, there are often undisputed physical facts clearly shown in evidence, and by applying to them a well-known law of nature, of mathematics, or the like, it is demonstrated beyond controversy that the verdict of finding is based upon what is untrue and cannot be true. In such case, it is very generally held that the appellate court should take judicial notice of the law or nature or mathematics or quality of matter, or whatever it may be that rules the case and apply it as a trial court should have done.' "

In *Brice v. Miller,* 121 Colo. 552, 218 P. (2d) 746, we find the following pertinent language:

"* * * The bare statement that the truck was 'stopped' upon the highway, when considered in the light of all the surrounding circumstances, does not rise to the dignity of evidence sufficient in itself to be the sole basis for liability of the defendants. * * *."

In *Wheeler v. Des Moines City R. Co.,* 205 Iowa 439, 215 N. W. 950, 55 A. L. R. 473, it was said:

"* * * The only evidence on which to base this charge [high speed] is that of the plaintiff, above set forth, that the street car started with a jerk, and got up a speed of 15 miles an hour in 5 feet. Her opinion that the car got up a speed of 15 miles an hour in 5 feet is so wanting in foundation, so inherently improbable, and so irreconcilable with the undisputed physical facts that the court would be without justification in accepting it as a basis of liability. * * *."

■ Evidence offered by plaintiff to prove that a bottle exploded on a shelf of the display rack was insufficient to warrant the trial court in submitting the matter to the jury on the theory of an exploding bottle and it was

error to instruct the jury on the doctrine of *res ipsa loquitur* as applied to exploding bottles.

The record shows that the Beverage Co. had neither possession nor control of the premises in which plaintiff received her injuries, or the contents thereof. The record clearly shows that it had not been in the store during the five days immediately preceding the occurrence which is the basis of this action, hence, in the absence of proof of an exploding bottle, there is no evidence of any negligence on the part of the Beverage Co. There being no evidence to establish the spontaneous explosion of a bottle, it follows that the plaintiff's claim against the Beverage Co. must be dismissed.

From the record before us we find a very different situation with reference to the plaintiff's claim against Chapman.

█ The evidence is undisputed that plaintiff was an invitee in Chapman's store, that Chapman was in full, complete and exclusive possession of the building and its contents. As pointed out above, all of the testimony and physical surroundings at the time and place of the plaintiff's injuries indubitably establish the fact that a bottle, under the exclusive possession and control of Chapman, located in a store in his exclusive possession and control, fell, or was knocked from a shelf, and broke, causing injuries to the plaintiff.

Such evidence warrants the conclusion that plaintiff has met the requirements of proof necessary to raise a presumption of negligence as against Chapman under the doctrine of *res ipsa loquitur,* and the court should have instructed the jury on the doctrine as applied to the foregoing facts rather than on the unproven allegations of an exploding bottle. *Gylling v. Hinds,* 122 Colo. 345, 222 P. (2d) 413; *Scott v. Joslin Co.,* 125 Colo. 367, 243 P. (2d) 394; *Weiss v. Axler,* 137 Colo. 544, 328 P. (2d) 88.

The judgment is reversed and cause remanded with directions to dismiss the complaint as against the Beverage Co.; to grant a new trial as to the defendant Chap-

man, permitting the parties to amend their pleadings as they may be advised, and to make final disposition of the action consistent with the views herein expressed.

MR. JUSTICE SUTTON dissents. MR. JUSTICE PRINGLE does not participate.

MR. JUSTICE SUTTON dissenting:

I respectfully dissent for the reasons hereinafter expressed. Clarice Redwine claimed that her personal injuries, which occurred in defendant Chapman's grocery store, were caused by flying glass from what she believed and alleged to be an exploding bottle of pop which had been bottled by defendant Rocky Mountain Beverage, Inc., and placed by it on Chapman's shelf.

The theory of her case as pled and tried was that of *res ipsa loquitur*. I have examined the record before us and cannot agree with the statements made in the majority opinion to the effect that Mrs. Redwine's evidence was incredible and insufficient to support any finding of the spontaneous explosion of a bottle on the rack or elsewhere. If the entire evidence were as set forth in that opinion it would be correct; however, when based upon the non-conflicting evidence before the court, most of which supports Mrs. Redwine's thesis, and as determined by a jury, I believe the majority opinion to be incorrect.

Let me briefly review the evidence.

Both Mrs. Redwine and her husband testified to the events set forth in the opinion; however, in addition there were the following uncontradicted facts:

1. There is evidence that one of Chapman's employees, a Mrs. Meade, at various times prior to the accident had moved, changed and dusted the pop bottles on the shelves next to where Mrs. Redwine was standing at the time of her injury.

2. The same type of control was exercised over the bottles by defendant Rocky Mountain Beverage, Inc.'s driver when he made his usual weekly deliveries.

3. The bottle was one furnished by Rocky Mountain.

4. Almost immediately after the accident, *before* Chapman and the others who testified as to the location of the debris on the floor could check the shelves and area in question, a boy who worked for Chapman had swept up the mess.

5. A week or so after the accident a Rocky Mountain Beverage, Inc., delivery driver found the shelf from which it appeared the bottle had come to be "sticky and dirty" and washed it off.

6. The cashier as well as Mrs. Redwine and her husband testified as to the noise of a bottle breaking. The only difference was as to whether it sounded like an "explosion" or a "crash."

Weighing the evidence before the court was the duty of the jury under proper instructions. It did so, and there being support for its verdict it is not our function or power to set its solemn declaration aside because we may disagree therewith.

Based on all the evidence I cannot say that it was physically impossible or technically impossible for the bottle to have exploded. Evidently the jury was of the same view. Clearly Mrs. Redwine was in no position to establish the cause of the explosion or of the fall, whichever it was, that resulted in her injury. It seems to me that this is the type of case described in *Fries v. Ritter,* 381 Pa. 470, 473, 112 A. (2d) 189 (1955) (a truck accident case) where it was said:

" * * * where circumstantial evidence is relied upon to prove negligence the evidence must be such as to enable the jury to conclude — not by conjecture or guess but — as a reasonable and legitimate inference that the accident was caused by the negligence of the defendant. In order to do so the evidence must clearly and sufficiently describe or picture the happening of the accident in such a manner that the only reasonable inference and conclusion from the facts and circumstances which were proved is that defendant was negligent:"

The Pennsylvania court applied this same rule later in *Klimczak v. 7 Up Bottling Co. of Philadelphia,* 385 Pa. 287, 122 A. (2d) 707 (1956).

In *Loch v. Confair,* 372 Pa. 326, 93 A. (2d) 451 (1953) the court stated:

"Viewing realistically the situation presented by the circumstances of the present case, it is obvious that, so far as the evidence discloses, the wife plaintiff was not injured through any fault of her own, and therefore, if the occurrence of the accident was due to negligence on the part of either of the defendants, plaintiffs should be entitled to redress. It is clear too that the breaking of the bottle could have resulted only from a defect in the bottle itself, or from an excessive internal pressure due to overcarbonation, or from the subjection of the bottle to some extreme atmospheric or temperature changes or some mishandling, as, for example, the striking of it by a hard object. Manifestly it would be entirely beyond the ability of the plaintiffs to ascertain and establish which of these possibilities was in fact the cause of the accident, whereas the defendant Beverage Company could readily explain the equipment and the methods employed by it in bottling the ale and the defendant A. & P. Company was equally in a position to explain the manner in which it handled, displayed and protected the bottles placed on its shelves for sale. It would seem, therefore, notwithstanding the limitations on the applicability of the doctrine of res ipsa loquitur and exclusive control previously referred to, that reason and justice alike should entitle plaintiffs to the benefits of those methods of establishing a prima facie case."

The majority opinion indicates that perhaps the bottle fell or was knocked from the shelf and exploded as it hit. That might have happened but again I point out that this Court is not the trier of the facts. In this connection upon retrial it is said that the bottler should be dismissed from the suit and the case, if re-tried, should proceed on the res ipsa loquitur theory as against the

store owner only. Naturally, taking the position that the judgment should be affirmed I cannot agree with any such limitation.

In this connection I point out that even though the normal type of joint control of the premises by the two defendants is not shown, nevertheless, the facts call for application of the doctrine of res ipsa loquitur as to both of them in this type of case. My reasons are:

1. The plaintiff was in no position to establish the cause of the explosion or fall of the bottle which resulted in her injury.

2. The bottler could show that the bottle did not explode, if such were the case, and, the store owner could show, if such were the case, that the bottle did not fall from the shelf because of safe construction, ample aisle width and so forth.

3. A suit against joint tort feasors, under the doctrine even though finally only one was held liable, has been upheld by our Court. *Beadles v. Metayka,* 135 Colo. 366, 311 P. (2d) 711 (1957), (doctor held liable when he, hospital and anesthetist were joined as defendants when a patient fell from an operating table). Compare *Ybarra v. Spangard,* 25 Cal. (2d) 486, 154 P. (2d) 687, 162 A.L.R. 1258 (a doctor, nurse, hospital, patient case).

My position is that under the facts and pleadings of this case the jury was entitled to find that the bottle exploded and, in the absence of satisfactory proof exonerating them of negligence, could find both defendants liable.

It is well to point out here that the question of liability in cases of this type has been the subject of numerous lawsuits and at least seven theories of decision appear to range the spectrum according to Dean Roscoe Pound in his article on "The Problem of the Exploding Bottle," Vol. XL, Boston University Law Review, No. 2, Spring 1960. Suffice it to say that some jurisdictions still deny the application of res ipsa loquitur holding that negligence must be proved; others that res ipsa loquitur cannot apply to the retailer; and, the doctrine of implied

warranty has been advanced as has the theory of a dangerous instrumentality, together with variations in these theories.

Of course, if my view prevailed we would also have to rule upon other matters raised by the writ of error and by the assigned cross-error. As to these, and without further explanation, I can say I have examined the grounds urged and can see no reason to reverse the judgment; however, an affirmance would require a discussion of several issues raised.

To summarize, I am persuaded that Mrs. Redwine was, on this record, entitled to the presumptions afforded her under the doctrine of res ipsa loquitur as applied by the trial court under the holding in *Weiss v. Axler,* 137 Colo. 544, 328 P. (2d) 88 (1958). The evidence showed her presence at the scene of the accident, on premises under the ownership and control of Chapman but serviced as well by Rocky Mountain who furnished the bottle in question; and, there is no evidence Mrs. Redwine knocked the bottle off or caused it to fall. This entitled her to invoke the benefit of the doctrine. Her belief that the bottle exploded is immaterial. Even if she had not shown prima facie evidence sufficient to warrant the conclusion that the bottle did explode, her evidence and pleadings did place the duty of explaining what happened on the defendants below. No such evidence being in the record I would affirm the judgment.